**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PCG PUBLISHING GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 5:17-cv-111 |
| REAGAN LEWIS, SADA LEWIS, SEAN | ) | |
| BLASKO, MELISSA BLASKO, DENISE | ) | |
| SIMMONS, and CHEVEUX ROUX, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORIGINAL COMPLAINT

1.      PCG Publishing Group, LLC ("**PCG**" or "**Plaintiff**") brings this action against Reagan Lewis, Sada Lewis, Sean Blasko, Melissa Blasko, Denise Simmons, and Cheveux Roux, LLC d/b/a Papeterie Bleu for, *inter alia*, trade secret misappropriation under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831, *et seq.*, and the Texas Uniform Trade Secrets Act, and conspiracy to commit trade secret misappropriation.

### I.
### The Parties

2.      Plaintiff PCG Publishing Group, LLC is a Texas limited liability company located at 3610 Avenue B, San Antonio, Texas  78209.

3.      Reagan Lewis is an individual living and residing in the State of Texas.  On information and belief, Reagan Lewis may be served at 332 Fleetwood Rd., Hollywood Park, Texas 78232.

4.     Sada Lewis is an individual living and residing in the State of Texas.  On information and belief, Sada Lewis is the wife of Reagan Lewis and may be served at 332 Fleetwood Rd., Hollywood Park, Texas 78232.

5.     Defendant Cheveux Roux, LLC is a Texas limited liability company with a registered corporate address of 2405 Dorrington St., Houston, Texas 77030.  Defendant Cheveux Roux, LLC operates under the assumed name Papeterie Bleu.  The registered agent of Cheveux Roux, LLC is Denise Simmons, who may be served at the registered address located at 2405 Dorrington St., Houston, Texas 77030.

6.     Sean Blasko is an individual living and residing in the State of Texas.  On information and belief, Sean Blasko is an owner of Cheveux Roux, LLC.  On information and belief, Sean Blasko may be served at 225 Sunway Dr., Hollywood Park, TX 78232.

7.     Melissa Blasko is an individual living and residing in the State of Texas.  On information and belief, Melissa Blasko is the wife of Sean Blasko and an owner of Cheveux Roux, LLC.  On information and belief, Melissa Blasko may be served at 225 Sunway Dr., Hollywood Park, TX 78232.

8.     Denise Simmons is an individual living and residing in the State of Texas.  On information and belief, Denise Simmons is the Manager of Cheveux Roux, LLC.  On information and belief, Denise Simmons is the sister of Sean Blasko and an owner of Cheveux Roux, LLC.  On information and belief, Denise Simmons may be served at 2405 Dorrington St., Houston, Texas 77030.

9.     In this Original Complaint, Cheveux Roux, LLC, Sean Blasko, Melissa Blasko, and Denise Simmons, are collectively referred to as "**Cheveux**."

**II.**
**Jurisdiction and Venue**

10.    This Court has subject matter jurisdiction over the claims asserted by PCG under 28 U.S.C. §§ 1331, 1338(a), 18 U.S.C. § 1836(c), 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 2201, *et seq.*, and supplemental jurisdiction over remaining claims under 28 U.S.C. §§ 1338(b), and 1367(a).

11.    The Court has personal jurisdiction over Reagan Lewis since he resides in the State of Texas.

12.    The Court has personal jurisdiction over Sada Lewis since she resides in the State of Texas.

13.    The Court has personal jurisdiction over Cheveux since it does business in, is incorporated in, and resides in the State of Texas.

14.    The Court has personal jurisdiction over Sean Blasko since he resides in the State of Texas.

15.    The Court has personal jurisdiction over Melissa Blasko since she resides in the State of Texas.

16.    The Court has personal jurisdiction over Denise Simmons since she resides in the State of Texas.

17.    Venue is properly located in the Western District of Texas, San Antonio Division under 28 U.S.C. §§ 1391(b), (d),  and 1400(a) because Cheveux or its agents may be found in this District, Reagan Lewis and Sada Lewis resides in this District, or a substantial part of the events giving rise to the asserted claims occurred in this District.

### III.
### Facts

**A.     Plaintiff PCG and Its Coloring Books for Adults**

18.     PCG is a publishing company founded in April of 2015 by Camden Hendricks,

Peter Licalzi, and Gabe Coeli.  The company creates, publishes, and sells books, including under

its Blue Star Coloring and Paige Tate & Co. trademarks.

19.     Plaintiff was formed with the idea of offering coloring books specifically

designed for adults, in contrast to traditional coloring books primarily marketed to children.

PCG's first book, entitled "Adult Coloring Book: Stress Relieving Patterns," is shown below:



20.     PCG and its adult coloring books have proven to be enormously successful. For

example, after it launched, PCG's "Adult Coloring Book: Stress Relieving Patterns" book began

immediately rising up the Amazon best seller list, eventually becoming the number fifteen

overall most sold book on Amazon for the year of 2015. Other highly-successful adult coloring

books from PCG have followed, including "Adult Coloring Book: Stress Relieving Animal Designs" and "Adult Coloring Book: Stress Relieving Patterns Volume 2."

21.    PCG quickly became recognized as an industry leader in the burgeoning market for adult coloring books, and was featured prominently in well-known media, including the New York Times, CNN, Forbes, and Good Morning America. **Exhibit A** provides an article from Forbes.com showing some of the coverage of PCG. With the favorable coverage, many national companies and celebrities have approached PCG to work on various projects.

22.    A key part of PCG's recipe for success is its highly confidential sales and marketing techniques, which give it an important competitive advantage in online marketplaces. In particular, PCG utilizes proprietary methods to advertise and sell its books on the Amazon.com marketplace. While the Amazon.com marketplace can potentially reach numerous customers, its open nature fosters intense competition. Thus, a seller's marketing and sales techniques are critical to connecting with customers.

23.    Recognizing the importance of online marketing techniques, PCG spent substantial time and effort to develop methods for selling books on the Amazon.com marketplace. Camden Hendricks, one of the founders of PCG, combined his experience gained from years in the publishing industry with extensive research and testing to develop the foundation for PCG's proprietary marketing techniques. Peter Licalzi further advanced these techniques with his insights into packaging, branding, and e-commerce sales conversions. The confidential techniques and information that PCG created allow it to efficiently and successfully promote and sell coloring books through Amazon.com.

24.    PCG's confidential and proprietary information and methods include the following:

    a.   General keywords and search terms for marketing adult coloring books and other products on Amazon.com;

    b.   Specific keywords and search terms for selling particular adult coloring books or other publications on Amazon.com, including without limitation five secret keywords for each specific item listed on Amazon.com;

    c.   Techniques for determining the specific keywords to utilize for marketing an adult coloring book or product;

    d.   Methods for creating a combination of a publication's title, cover art, and description to maximize consumer interest and sales;

    e.   Methods for utilizing keywords and platforms to maximize consumer interest and sales in a product; and

    f.   Paid-advertising information (sponsored product listing), including lists of keywords, the pricing for each keyword in each list, and budget information.

25.    PCG's confidential techniques, methods, and information for advertising and selling adult coloring books are hereinafter collectively referred to as the "**Trade Secrets**."

26.    The Trade Secrets were painstakingly developed by PCG, and Plaintiff has continually improved and refined them using ongoing market research and analysis. The Trade Secrets are not known to or readily ascertainable by the public. Moreover, PCG has taken measures to protect the Trade Secrets from disclosure. For example, access to PCG's Trade Secrets is restricted, and only certain employees of PCG can utilize the Trade Secrets due to their proprietary nature.

27.     PCG uses the Trade Secrets in marketing and selling coloring books on Amazon.com. The Trade Secrets are highly valuable to PCG, in part because they have given and continue to give PCG an advantage in the highly-competitive online marketplace for books, including adult coloring books. As one example, the success of PCG's "Adult Coloring Book: Stress Relieving Patterns" was driven in large part by the Trade Secrets, in addition to the exceptional quality of the book.

28.     Given the incredible success of PCG, coloring books designed for adults become a very sought after and trendy item, greatly increasing competition and making the Trade Secrets all the more important.

**B.      Reagan Lewis, Sada Lewis, and Their Initial Involvement with PCG**

29.     In the summer of 2015, PCG was publishing additional titles and experiencing rapid growth in sales. Around that time, Reagan Lewis approached PCG, desperate to join the business. Reagan Lewis was a friend of the one of the founders of PCG and was well-aware of PCG's growing success.

30.     Reagan Lewis suggested a number of ideas for coloring books, including a coloring book for adults with a Christian theme.  According to Reagan Lewis, the idea was conceived by his wife, Sada Lewis.  On information and belief, Reagan and Sada Lewis had no experience in publishing or e-commerce, but were, and to Plaintiff's knowledge still are, accountants.  As such, Reagan and Sada Lewis had no sketches, drawings, or other materials for the proposed Christian coloring book—just the notion of making such a book.

31.     PCG decided to move forward with a Christian-themed coloring book to test the market for such a product.  PCG used its Trade Secrets to oversee the design, creation, and publication of the book, including the book layout, selection of images from artists (to which Sada Lewis contributed drawings), and the cover and title scheme. PCG also paid the license fees

7

for stock images used in the book. The result was a Christian-themed coloring book titled "Beauty in the Bible." Having finalized the "Beauty in the Bible" coloring book, PCG used its Trade Secrets to advertise, market, and sell the book on Amazon.com as well as to secure availability through all major distribution channels, including in foreign markets.

32.    Not surprisingly, as a direct result of PCG's Trade Secrets, "Beauty in the Bible" was almost immediately successful and began climbing the best seller list on Amazon.com. PCG had once again used its Trade Secrets to create a hit adult coloring book on Amazon.com, this time with its "Beauty in the Bible" coloring book.

**C.    Reagan Lewis' Hiring by PCG and Sean Blasko**

33.    With the success of its "Beauty in the Bible" book, PCG moved to create an entire line of Christian-inspired coloring books.  PCG decided that a separate trademark, or imprint, should be created to market its Christian-inspired coloring books, eventually selecting the mark "Paige Tate & Co."

34.    PCG also decided to entrust Reagan Lewis with management of PCG's new Paige Tate & Co. line of coloring books and sought to hire him as a full-time employee.

35.    In fall 2015, Reagan Lewis entered into negotiations with PCG regarding the terms of his employment. PCG and Reagan Lewis ultimately executed an Employment Agreement (hereinafter "**the Agreement**") on December 14, 2015, attached as **Exhibit B**, and Reagan Lewis began working as PCG's employee immediately thereafter.

36.    The Agreement included a provision that acknowledged and identified PCG's "Confidential Information."  PCG's confidential information included "any written or oral information of a proprietary nature," "trade secrets, know-how, processes and other technical or business information," "special marketing information, ideas, technical data and concepts

8

originated by" PCG, and "business or financial information directly or indirectly related to" PCG.

37.    The Agreement further included a Non-Compete provision that applied during the time he was an employee of PCG and for one year following the termination of his employment. Reagan Lewis agreed "that during the time he [was] an Employee of [PCG] he [would] not (1) directly or indirectly engage in, consult with, be employed by or be connected with any business or activity in the same or similar capacity which [Reagan Lewis] is engaged with [PCG] with a Competing Company[;] (2) own any interest in any Competing Company;  [and] (3) assist others to open or operate any Competing Company."

38.    Shortly after Reagan Lewis began his employment, he introduced his friend Sean Blasko to PCG. Upon information and belief, Sean Blasko, a licensed attorney, provided representation and legal advice to Reagan Lewis in negotiating the Employment Agreement. Blasko expressed a desire to become part of PCG as well and, in the last few weeks of 2015, Sean Blasko and PCG began a discussion on hiring Blasko as an employee or bringing him in as a member of PCG to run a new division at the company. However, in early 2016 Blasko seemingly lost interest, the negotiations stalled, and Blasko never began working with PCG.

**D.    Reagan Lewis' Employment with PCG and Termination**

39.    On starting his employment, Reagan Lewis took over management of PCG's Paige Tate & Co. brand of books, including the operation of PCG's online presence relating to the Paige Tate & Co. brand. His duties included running several social media accounts, the Paige Tate & Co. website (www.paigetate.com), and Amazon.com online storefront. PCG also issued Mr. Lewis a company laptop.

40.    In addition, PCG provided training to Reagan Lewis and access to the confidential information of PCG, including much of PCG's Trade Secrets.  Reagan Lewis was entrusted with

the Trade Secrets in accordance with his Employment Agreement, under which he acknowledged PCG's propriety rights.  PCG also introduced Reagan Lewis to key company contacts, including individuals at Amazon who worked with PCG.

41.    Through much of 2016, Reagan Lewis' management of the Paige Tate & Co. line of books appeared to be going well. Using the Trade Secrets, PCG published and marketed over a dozen additional titles under the "Paige Tate & Co." and "Beauty in the Bible" trademarks. PCG's offerings under those marks expanded from simple "print on demand" books to off-set print runs with significant volume and inventories. Reagan Lewis was even offered an ownership interest in PCG at one point.

42.    Sada Lewis worked as an independent contractor on four of PCG's books in or about 2016, performing editing on drawings and illustrations. When PCG requested that Sada formalize her work with PCG under either an independent contractor agreement or employee agreement, she declined, indicating that she wanted to be a stay-at-home mom. Upon information and belief, any other work Sada Lewis performed relating to PCG was at the direction of her husband Reagan Lewis.

43.    As the fall of 2016 progressed, Reagan Lewis began behaving oddly, in ways that undermined PCG's trust in him and strained the relationship. He scheduled meetings with PCG's current and prospective customers, but demanded that PCG's owners not participate. On information and belief, rather than using a company email account, he began transacting PCG business with his personal email account. Over weeks and months, Reagan Lewis gradually stopped communicating with and responding to inquiries from PCG's owners. When PCG requested the passwords for online accounts relating to the Paige Tate & Co. book line, Reagan flatly refused. The interactions of Reagan Lewis with the owners of PCG quickly deteriorated.

44.     What PCG now believes to have been the cause of the increasingly problematic relationship with Reagan Lewis would become evident only months later. Specifically, PCG believes that Reagan Lewis was covertly working with a competitor, Cheveux, to misappropriate PCG's Trade Secrets, undermine PCG, and actively conceal these actions from PCG.

45.     Based on what it knew at the time, PCG decided that keeping Reagan Lewis on the payroll was not in the company's long-term best interest. Over the course of several discussions, PCG attempted to negotiate Reagan Lewis's termination in good faith. In an effort to part way amicably, PCG went so far as to propose selling PCG's Paige Tate & Co. mark and the related inventory to Reagan Lewis, so that he could continue working on it. Reagan Lewis never disputed that PCG was the owner of the Paige Tate & Co. trademark, but he nonetheless refused all of PCG's reasonable attempts to resolve the situation.

46.     With the negotiations at a standstill, Reagan Lewis' employment at PCG was no longer tenable, and PCG had no choice but to terminate Reagan Lewis' employment as permitted under the Employment Agreement.  Mr. Lewis was terminated on January 5th, 2017.

**E.     Events in the Weeks After Reagan Lewis' Termination**

47.     After his employment ended, Reagan Lewis began openly violating his obligations, including those under the Employment Agreement. First, Reagan refused multiple written demands to return sensitive PCG tangible and intangible property.  For example, Mr. Lewis refused to return the PCG company laptop that was issued to him, and upon information and belief, Mr. Lewis still has the company laptop in his possession.  He additionally refused the reasonable request to turn over a key to the company offices of PCG.

48.     Reagan Lewis also refused to turn over critical passwords to PCG's social media accounts.  These accounts are used by PCG to market and sell its products under the Paige Tate & Co. trademark.  As of today, PCG has no control over what is placed on the Paige Tate & Co.

social medial pages. Reagan's willful refusal to turn over control is destroying PCG's ability to connect and communicate with its Paige Tate & Co. customers, and PCG continues to suffer significantly from Reagan Lewis' wrongful actions.

49.    Next, in a brazen effort to raise the stakes and extort money from PCG, Reagan Lewis began asserting that <u>he</u> was the rightful owner of the Paige Tate & Co. trademark. Just five days following his termination, Reagan Lewis' wife Sada filed three trademark applications for Paige Tate & Co.-related trademarks with the U.S. Patent and Trademark Office.  Those trademark applications were:

   a.   U.S. App. Ser. 87/295,601, *paige tate*, in Class 16 for "coloring books, craft/creative how-to workbooks, devotionals, journals, hand lettering books, how-to draw books, planners, coloring cards."

   b.   U.S. App. Ser. 87/295608, PAIGE TATE,  in Class 16 for "coloring books, craft/creative how-to workbooks, devotionals, journals, hand lettering books, how-to draw books, planners, coloring cards."

   c.   U.S. App. Ser. 87/295594, BEAUTY IN THE BIBLE, in Class 16 for "coloring books, craft/creative how-to workbooks, devotionals, journals, planners, coloring cards."

50.    After his wife filed the applications, Reagan Lewis began demanding that PCG pay him substantial amounts of money in exchange for transferring the wrongfully-applied-for trademark applications to PCG.

51.    Mr. Lewis is fully aware that "Paige Tate & Co." and "Beauty in the Bible" are PCG's trademarks. Indeed, during his employment, as part of his duties, Reagan Lewis told PCG management that he would direct PCG's trademark attorney to file applications for PAIGE TATE, BEAUTY IN THE BIBLE, and similar trademarks related to the Paige Tate & Co. line of books. He never did so.

52.    Likewise, Sada Lewis is fully aware that PCG owns the "Paige Tate & Co." and "Beauty in the Bible" trademarks, including based on her (i) her work as an independent contractor for PCG and (ii) her knowledge of Reagan Lewis' obligations as an employee of PCG who managed the Paige Tate & Co. imprint for the benefit of his employer.

53.    Neither Reagan Lewis nor Sada Lewis has ever used the applied-for "Paige Tate & Co." and "Beauty in the Bible" trademarks in commerce. To the contrary, both Reagan and Sada Lewis knows that the true owner of the marks and the source of goods sold under the applied-for marks is and always has been PCG.

54.    Upon information and belief, Sada Lewis fraudulently filed the above trademark applications with the U.S. Patent and Trademark Office at the request of her husband, Reagan Lewis.

**F.    Cheveux Roux, LLC and the Misappropriation of PCG's Confidential Information**

55.    The actions of Reagan and Sada Lewis following Reagan's termination raised PCG's suspicions and prompted an investigation. This investigation uncovered what PCG believes was the cause for Reagan Lewis' departure from PCG and his subsequent actions—he was misappropriating PCG's Trade Secrets in coordination with Cheveux Roux, LLC, a competitor book company created by his friend (and one-time prospective employee of PCG) Sean Blasko and led by Sean Blasko's wife Melissa Blasko and sister Denise Simmons.

56.    Specifically, PCG discovered that Cheveux had for nearly a year before Reagan Lewis' termination been selling adult coloring books and other publications on Amazon.com under several imprints, including the name "Papeterie Bleu." Cheveux's products were largely knock-offs of PCG's, with extremely similar theme, layout, appearance, and design to the products offered by PCG.

57.    In fact, PCG found there were dozens of titles that were highly similar to titles offered by PCG.  Below are just a few examples of the similar items:

  a.    PCG's "Dia de los Muertos" and the Cheveux knock-off:

 

PCG Published Work
"Dia de los Muertos"

Cheveu Published Work
"Dia De Los Muertos"

  b.    PCG's "Dia de los Muertos: Midnight Edition" and the Cheveux knock-off:

 

PCG Published Work
"Dia de los Muertos:
Midnight Edition"

Cheveu Published Work
"Dia De Los Muertos:
Midnight Edition"

  c.    PCG's "Adult Coloring Book: Stress Relieving Animal Designs" and the Cheveux knock-off:

14




PCG Published Work
"Adult Coloring Book:
Stress Relieving Animal Designs"

Cheveu Published Work
"Sugar Skulls:
Animal & Aliens"

    d.  PCG's "Word Search" Book and the Cheveux knock-off:




PCG Published Work
"Word Search"

Cheveu Published Work
"Word Search"

58.    Upon information and belief, Reagan Lewis, Sada Lewis, and/or Cheveux have published additional knock-offs of PCG's products using other assumed and fictional names to conceal the source of the knock-offs.

59.    Startlingly, PCG found that Reagan Lewis' friend Sean Blasko had filed Cheveux's Certificate of Formation on January 8, 2016, right around the time that Blasko appeared to lose interest in joining PCG. Further investigation showed that Cheveux is led by

15

Sean Blasko's wife Melissa Blasko and sister Denise Simmons. Upon information and belief, Sean Blasko has created and/or owns additional entities that make and sell knock-offs of PCG's products.

60.    Upon information and belief, prior to 2016, Sean Blasko, Melissa Blasko and Denise Simmons had no background, knowledge, or experience in publishing or in online marketing.

61.    Most troublingly, unlike other competitors in the market, Cheveux's coloring book knock-offs were often published just days or weeks after PCG's own offerings, far quicker than anyone else (let alone a group of individuals with little or no publishing experience) could reasonably produce such books. For example, in connection with PCG's "Dia de los Muertos" and "Dia de los Muertos: Midnight Edition" publications, Cheveux released its knock-off coloring books mere days following the release of the corresponding PCG titles.

62.    Upon information and belief, it would not have been possible for Cheveux to examine the published PCG "Dia de los Muertos" works, arrange for alternate illustrations, obtain the relevant licenses for those illustrations, prepare the marketing materials, and conduct technical upload in the span of only a few days. That is, such a quick turnaround would not have been possible unless Cheveux received advanced and detailed knowledge of PCG's "Dia de los Muertos" book and its contents from Reagan Lewis, as PCG believes happened.

63.    In fact, in at least one instance, Cheveux actually came out with its knock-off before PCG published the original, when PCG encountered a longer-then-expected publishing lead time.

64.    While he was an employee of PCG, Reagan Lewis participated in confidential product development meetings and presented concepts or ideas for new adult coloring books.

16

For various reasons, some of these book proposals were not adopted by PCG at the time. However, PCG never authorized Reagan Lewis to disclose any proposals to competitors, and even the rejected proposals remained PCG's proprietary information. Nonetheless, Cheveux has published several adult coloring books using ideas that were previously proposed by Reagan Lewis but rejected by PCG. Upon information and belief, Reagan Lewis would pass his proposals that PCG did not adopt to Cheveux, after which Cheveux would publish adult coloring books identical to the rejected proposals.

65.     Upon information and belief, since at least January 2016, Reagan Lewis had provided PCG's confidential information and documents to Cheveux, including without limitation the Trade Secrets, and given Cheveux advanced knowledge of PCG's prospective product releases. Upon information and belief, since at least January 2016, Reagan Lewis and Cheveux had worked together in a scheme to deprive PCG of its confidential information, including the Trade Secrets.

66.     Upon information and belief, while an employee, Reagan Lewis secretly used PCG's confidential information, including without limitation the Trade Secrets, to establish one or more competing companies with his friend Sean Blasko in violation of his obligations as an employee and in breach of the Agreement.  Upon information and belief, Reagan Lewis had been stealing and unlawfully using PCG's information, including without limitation the Trade Secrets, for nearly one year before his termination.

67.     Upon information and belief, Reagan Lewis intentionally and knowingly supplied PCG's confidential information, including without limitation the Trade Secrets, to Cheveux in violation of the Employment Agreement.

68.     Upon information and belief, Reagan Lewis, Sada Lewis, and/or Cheveux have, since at least January 2016, unlawfully misappropriated and used PCG's Trade Secrets and other confidential information to make and sell knock-offs of PCG's products in competition with PCG, including through various entities, assumed names, and fictional names to conceal the source of the knock-offs.

69.     Upon information and belief, Cheveux, Sean Blasko, Melissa Blasko, and/or Denise Simmons colluded with Reagan Lewis to accept PCG's confidential information, including without limitation the Trade Secrets.  As a result of the use of PCG's confidential information, Cheveux has unjustly profited from the sales of adult in coloring books and other products.

## IV.
## Claims

### Claim 1:   Misappropriation of a Trade Secret in Violation of the Federal Defend Trade Secrets Act

70.     PCG hereby incorporates the allegations of Paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.     The Federal Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*, entitles PCG to relief as to all the Defendants.

72.     The acts of Defendant Reagan Lewis complained of herein constitute misappropriation under 18 U.S.C. § 1836 of Plaintiff PCG's Trade Secrets, including for example that:

   a.   Reagan Lewis acknowledged the ownership of valuable Trade Secrets of PCG in agreeing to the terms of the Employment Agreement;

b. The Agreement's definition of trade secrets, and the information that PCG claims are valuable Trade Secrets herein, conforms to the statutory definition provided under 18 U.S.C. § 1839;

c. PCG took reasonable measures to protect its Trade Secrets; and,

d. Upon information and belief, Mr. Lewis intentionally and knowingly engaged in a pattern of behavior that disclosed the Trade Secrets of PCG, without PCG's express or implied permission, to Cheveux, the Blaskos, or Denise Simmons.

73.    The acts of Defendants Cheveux, Sean Blasko, Melissa Blasko, Denise Simmons, and Sada Lewis complained of herein constitute misappropriation under 18 U.S.C. § 1836 of Plaintiff PCG's Trade Secrets, including for example that:

a. Defendant Cheveux and Sean Blasko had knowledge of the existence of PCG's valuable Trade Secrets, at least because:

i. Defendant Sean Blasko negotiated the terms of the Employment Agreement;

ii. Defendant Sean Blasko met with PCG for the purpose of joining the successful business of PCG;

iii. Defendant Reagan Lewis informed the other Defendants about the existence of the Trade Secrets; and,

b. Upon information and belief, Defendants had knowledge that they acquired PCG's Trade Secrets through improper means, namely as Cheveux and its agents induced Defendant Reagan Lewis to breach a duty

of confidentiality as to PCG's Trade Secrets and that they were aware of

Reagan Lewis' duty of non-disclosure.

74.    Upon information and belief, Defendants will continue to use PCG's

misappropriated Trade Secrets to their unjust enrichment.

75.    As there is no adequate remedy at law, PCG requests a preliminary and permanent

injunction issue against all Defendants to prevent use of PCG's Trade Secrets.

76.    PCG requests actual damages and any additional award for unjust enrichment that

the court in its judgment finds is warranted.

77.    Upon information and belief, the misappropriation complained of herein was

willful and malicious, and hereby requests enhanced damages be applied to any damages award

as permitted by statute.

**Claim 2:   Misappropriation of a Trade Secret in Violation of the Texas Uniform Trade Secrets Act**

78.    PCG hereby incorporates the allegations of Paragraphs 1 through 77 of this

Complaint as if fully set forth herein.

79.    The Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §§

134A.001, *et seq.*, entitles PCG to relief as to all the Defendants.

80.    PCG owns valuable trade secrets, including without limitation the Trade Secrets

identified in Paragraph 24 above, and as otherwise defined in the Employment Agreement made

between PCG and Reagan Lewis.  The definition of trade secrets provided in the Employment

Agreement conforms to the statutory definition provided under Tex. Civ. Prac. & Rem. Code

§134A.002.

81.    PCG's Trade Secrets were subject to reasonable efforts to keep them confidential,

such as by limiting access, by the constraints imposed under the terms of the Employment

Agreement, and through PCG's use of Non-Disclosure Agreements signed with independent contractors.

82.    Defendant Reagan Lewis' conduct complained of herein demonstrates that the information protected under the Employment Agreement has actual or potential independent economic value because it is generally unknown and not readily ascertainable by third parties.

83.    Upon information and belief, Defendant Reagan Lewis misappropriated PCG's Trade Secrets, including because he was aware of the Trade Secrets based on the Employment Agreement and he disclosed them to the remaining Defendants without the consent of PCG.

84.    Upon information and belief, Defendants Cheveux, Sean Blasko, Melissa Blasko, Denise Simmons, and Sada Lewis misappropriated PCG's Trade Secrets as they acquired them under circumstances giving rise to a duty to maintain its secrecy, or they derived it from Reagan Lewis, who they knew had a duty to PCG to maintain its secrecy or limit its use.

85.    Defendants' misappropriation resulted in damages due to diversion of sales based on the existence of the suspiciously similar coloring books, as well as corresponding loss of profits.

86.    As there is no adequate remedy at law, PCG requests a preliminary and permanent injunction issue against all Defendants to prevent use of PCG's Trade Secrets.

87.    PCG requests actual damages and any additional award for unjust enrichment that the court in its judgment finds is warranted.

88.    On information and belief, the misappropriation complained of herein was willful and malicious, and hereby requests enhanced damages be applied to any damages award as permitted by statute.

**Claim 3:   Breach of Texas Covenant Not to Compete Act**

89.    PCG hereby incorporates the allegations of Paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.    The Texas Covenants Not to Compete Act, Tex. Bus. & Comm. Code §§ 15.50–.52, entitles PCG to relief against Defendant Reagan Lewis.

91.    PCG and Reagan Lewis entered into an enforceable Employment Agreement on December 14, 2015.

92.    The Agreement included a Covenant Not to Compete under Section 6 of the Agreement.

93.    The Covenant's limitations were reasonable as it restricted competitive activities during Mr. Lewis' employment, specifically preventing Mr. Lewis from colluding or assisting others to publish materials intended to be colored in and with any medium, to include coloring books as sold by PCG.

94.    The covenant's limitation were further reasonable as they contained an exception that would apply if the "Competing Company," as defined in the Agreement, had been in existence two (2) years before the date of the" of Mr. Lewis hiring date.  The exception does not apply in this case.

95.    By his representation and warranty, Reagan Lewis agreed that the covenant's limitations were both reasonable and that they did not impose a greater constraint than was necessary.

96.    Upon information and belief, Mr. Lewis colluded with Sean Blasko, Melissa Blasko, and Denise Simmons in opening and operating a "Competing Company" in violation of his warranty in the Employment Agreement.

97.    As there is no adequate remedy at law, PCG requests a preliminary and permanent injunction issue against Reagan Lewis from his actions complained of herein, including to prevent use of PCG's Trade Secrets.

98.    PCG additionally seeks actual damages, including lost profits.

99.    Based on the existence of the additional Claims in this Complaint, PCG seeks exemplary damages.

**Claim 4:    Common Law Breach of Fiduciary Duty**

100.    PCG hereby incorporates the allegations of Paragraphs 1 through 99 of this Complaint as if fully set forth herein.

101.    PCG is entitled to relief under Texas common law against Defendant Reagan Lewis.

102.    PCG and Reagan Lewis entered into a Principle-Agent relationship under the Employment Agreement, whereby Mr. Lewis was directed by the President of PCG to act as the manager of the imprint of Paige Tate & Co. for the benefit of PCG.

103.    Upon information and belief, Reagan Lewis breached his fiduciary duty as an agent of PCG, including the duties of loyalty, utmost good faith, and the duty to refrain from self-dealing by breaching his obligations under the Employment Agreement, using PCG's Trade Secrets for his personal pecuniary benefit, and disclosing PCG's Trade Secrets to the remaining Defendants.

104.    Reagan Lewis' breach of his fiduciary duty caused injury to PCG through the misappropriation of its Trade Secrets to the remaining defendants and the associated loss in profits resulting from diverted sales to the remaining defendants.

105.    Upon information and belief, Reagan Lewis personally benefited from his breach, either through sales of coloring books he sold independently from the remaining defendants, or through compensation from the remaining defendants.

106.    PCG seeks economic damages from Reagan Lewis' wrongful conduct as well as lost profits from the diversion of sales to the remaining defendants, as well as exemplary damages.

107.    PCG seeks equitable relief from Reagan Lewis' wrongful conduct including forfeiture of the consideration he received under the Employment Agreement and profit disgorgement.

**Claim 5:    Common Law Breach of Contract**

108.    PCG hereby incorporates the allegations of Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    PCG is entitled to relief under Texas common law against Defendant Reagan Lewis for breach of contract.

110.    PCG and Reagan Lewis entered into an enforceable contract memorialized in the Employment Agreement.

111.    PCG, as a party to the Employment Agreement, may enforce the contract.

112.    PCG fully or substantially performed on the contract while Reagan Lewis was an employee by making the required salary and commission payments described under the Agreement.

113.    Reagan Lewis materially breached the Agreement through failing to abide by his obligations under the non-compete and trade secret provisions of the Agreement.

24

114.    Reagan Lewis' material breach of the Agreement caused injury to PCG through the misappropriation of its Trade Secrets to the remaining defendants and the associated loss in profits resulting from diverted sales to the defendants.

115.    PCG seeks economic damages from Reagan Lewis, including actual damages and damages as a result of Reagan Lewis' unjust enrichment.

**Claim 6:    Common Law Conversion**

116.    PCG hereby incorporates the allegations of Paragraphs 1 through 115 of this Complaint as if fully set forth herein.

117.    PCG is entitled to relief under Texas common law as against Defendant Reagan Lewis for conversion.

118.    PCG supplied Reagan Lewis with a company laptop and key to the offices of PCG.

119.    Reagan Lewis operated several online social media pages to advertise PCG's products, including coloring books supplied through the Paige Tate & Co. trademark.  Reagan Lewis operated these social media pages for the benefit of his employer, PCG.

120.    The Paige Tate & Co. social media pages are accessed through confidential passwords.  Reagan Lewis is the only individual in possession of these passwords.  Confidential information may be deemed to be personal property under Texas law.

121.    Upon termination of his employment, Reagan Lewis lawful possession of the PCG personal property ceased.

122.    PCG has provided a written demand for the return of the PCG personal property.

123.    PCG has suffered injury through a loss of use of the company laptop and loss of access to the social medial pages, with a corresponding loss of ability to market its products.

124.    PCG seeks actual damages based on loss of use of the PCG personal property and an injunction ordering the return of the company laptop and passwords to the social media pages.

**Claim 7:    Common Law Unfair Competition**

125.    PCG hereby incorporates the allegations of Paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.    PCG is entitled to relief under Texas common law against Defendants Cheveux, Sean Blasko, Melissa Blasko, and Denise Simmons for unfair competition.

127.    PCG has a cognizable and protectable legal interest in its method of marketing its products through Amazon.com and other online retailers.

128.    PCG expended years developing its method of marketing its products through Amazon.com and other online retailers.

129.    PCG's time, money, and sweat equity invested in creating its marketing strategy rapidly paid off after launching its first series of coloring books in 2015 as it became the industry leader in adult coloring books.

130.    On information and belief, through the disclosure of PCG's confidential marketing methods and prospective book releases to Cheveau, the Blaskos, and Denise Simmons, the defendants were able to use PCG's marketing strategies to rapidly enter the adult coloring book market without being required to expend the time and effort to determine the marketing strategy or create new book concepts.  Defendants Cheveux, the Blaskos, and Denise Simmons thereby acquired a special competitive advantage over other competitors of PCG.

131.    On information and belief, defendants' special competitive advantage resulted in a diversion of sales from PCG to Cheveux, with an accompanying loss in sales, market share, and lost profits.

132.    PCG seeks actual damages, including defendant's profits from use of its marketing methods.

**Claim 8:    Tortious Interference With Existing Contract**

133.    PCG hereby incorporates the allegations of Paragraphs 1 through 132 of this Complaint as if fully set forth herein.

134.    PCG is entitled to relief for tortious interference with existing contract under Texas common law against Defendants Cheveux, Sean Blasko, Melissa Blasko, and Denise Simmons.

135.    PCG had a valid contract in the Employment Agreement signed with Reagan Lewis.  Cheveux, via its agent Sean Blasko, was aware of the existence and terms of the Agreement.

136.    On information and belief, Cheveux willfully and intentionally induced or colluded with Reagan Lewis to violate the non-compete and/or trade secret provisions of the Employment Agreement.  On information and belief, Cheveux willfully and intentionally induced or colluded with Reagan Lewis to provide it and its agents with the confidential information of PCG.

137.    The complained of acts of Cheveux and its agents proximately cause injury to PCG through the disclosure of the confidential information of PCG, including its marketing strategy and book concepts.

138.    The interference of Cheveau and its agents caused actual damage or loss to PCG through a diversion of sales to a competitor and loss of profits.

139.    PCG is entitled to recover at least its lost profits and/or the defendant's profits as a result of the tortious interference with the Employment Agreement signed with its former employee, Reagan Lewis.

### Claim 9:  Common Law Conspiracy to Commit Breach of a Fiduciary Duty, Interfere with a Contract, and Misappropriation of a Trade Secrets

140.    PCG hereby incorporates the allegations of Paragraphs 1 through 140 of this Complaint as if fully set forth herein.

141.    PCG is entitled to relief under Texas common law against Defendants for their conspiracy to wrongfully harm PCG.

142.    One or more Defendants committed the torts of breach of fiduciary duty, tortious interference with a contract, or misappropriation of a trade secret under federal and/or Texas law.

143.    The Defendants formed a combination of two or more persons.

144.    On information and belief, Defendants intentionally set out to unlawfully obtain the Trade Secrets of PCG for the purpose of obtaining an unfair competitive advantage, for pecuniary benefit, and to usurp the intellectual property of PCG.

145.    On information and belief, Defendants agreed to engage in the misappropriation of PCG's Trade Secrets through their conduct, thereby demonstrating a meeting of the minds to commit conspiracy.

146.    On information and belief, Defendants committed multiple unlawful and overt acts in furtherance of the conspiracy. To effectuate the conspiracy, Defendant Reagan Lewis signed an Employment Agreement drafted by Sean Blasko, and less than a month later, Sean Blasko organized Defendant Cheveux Roux, LLC and installed Denise Simmons as Manager of Cheveux Roux, LLC.  Denise Simmons then filed a d/b/a for Papeterie Bleu with the Texas Secretary of State and commenced directly competing with PCG in the adult coloring book market. Furthermore, on information and belief, Reagan Lewis repeatedly passed PCG's Trade Secrets and prospective book concepts to Cheveux. On information and belief, Defendants

repeatedly used PCG's Trade Secrets to create and sell competitive book titles, in some cases releasing an almost identical competitive book  before PCG's version was published.

147.    On information and belief, in a blatant attempt to conceal the existence of the conspiracy, Defendant Reagan Lewis deleted emails and other communications contained in his company email account that show collusion with the other members of the conspiracy.

148.    On information and belief, the other Defendants have attempted to conceal the existence of the conspiracy by deleting emails and other communications.

149.    Defendants' conspiracy proximately caused actual damages due to diversion of sales based on the existence of the suspiciously similar coloring books, as well as corresponding loss of profits.

### Claim 10: Declaratory Judgment of Trademark Ownership

150.    PCG hereby incorporates the allegations of Paragraphs 1 through 150 of this Complaint as if fully set forth herein.

151.    Since 2015, PCG has used the Paige Tate & Co. mark and the Paige Tate mark to identify and distinguish its products and services from those of others.

152.    For example, since 2015, PCG has continuously offered and sold adult coloring books using the mark Paige Tate & Co. and the mark Paige Tate.

153.    Since 2015, PCG has identified itself on printings of books sold under the Paige Tate & Co. mark and the Paige Tate mark as the source of goods.

154.    PCG has common law trademark rights in the Paige Tate & Co. mark, the Paige Tate mark, and any similar mark related to the goods its sells in commerce.

155.    Since 2015, PCG has used "Beauty in the Bible" as a trademark to identify and distinguish its products and services from those of others.

156.    Since 2015, PCG has identified itself as the source of adult coloring books using the Beauty in the Bible mark.

157.    PCG has common law trademark rights in the mark Beauty in the Bible, and any similar mark related to the goods its sells in commerce.

158.    An actual and immediate justiciable controversy exists between PCG, Sada Lewis, and Reagan Lewis concerning the "Paige Tate & Co." mark, the "Paige Tate" mark, and the "Beauty in the Bible" mark and, specifically, ownership of those marks as PCG.

159.    Both the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and Tex. Civ. Prac. & Rem. Code §§ 37.001, *et seq.*, entitle PCG to relief.

160.    Therefore, PCG seeks the following judicial declarations:

   a.  Defendants do not own, either in whole or in part, the PAIGE TATE & CO. mark or PAIGE TATE mark;

   b.  Defendants do not own, either in whole or in part, the BEAUTY IN THE BIBLE mark;

   c.  PCG is the sole and exclusive owner of the PAIGE TATE & CO. mark and the PAIGE TATE mark;

   d.  PCG is the sole and exclusive owner of the BEAUTY IN THE BIBLE mark;

   e.  PCG is the sole and exclusive owner of all PAIGE TATE & CO. marks used on or in connection with books, coloring books, craft/creative how-to workbooks, devotionals, journals, planners, stationary, and coloring cards;

   f.  PCG is the sole and exclusive owner of the BEAUTY IN THE BIBLE mark used on or in connection with books, coloring books, craft/creative

how-to workbooks, devotionals, journals, planners, stationary, and
coloring cards;

g.  PCG is the sole and exclusive owner of the marks identified in the
following U.S. trademark applications: the PAIGE TATE & CO. & design
mark U.S. Application Serial No. 87/295,601; the PAIGE TATE & CO.
standard character mark in U.S. Application Serial No. 87/295608; and the
BEAUTY IN THE BIBLE standard character mark in U.S. Application
Serial No. 87/295594; and,

h.  Sada Lewis fraudulently filed the three trademark applications listed
above in violation of 15 U.S.C. § 1051.

**V.**
**Prayer**

**A.    Requested Relief**

161.    Accordingly, PCG asks the Court to enter judgment against Reagan Lewis, Sada
Lewis, Cheveux Roux, LLC, Sean Blasko, Melissa Blasko, and Denise Simmons and grant the
following relief to PCG:

a.  Judgment be entered in favor of PCG and against Reagan Lewis as to Claims 1-6,
and 9-10 of the above counts;

b.  Judgment be entered in favor of PCG and against Sada Lewis as to Claims 1-2,
and 9-10 of the above counts;

c.  Judgment be entered in favor of PCG and against Cheveux Roux, LLC as to
Claims 1-2, and 7-9 of the above counts;

d.  Judgment be entered in favor of PCG and against Sean Blasko as to Claims 1-2,
and 7-9 of the above counts;

e.    Judgment be entered in favor of PCG and against Melissa Blasko as to Claims 1-2, and 7-9 of the above counts;

f.    Judgment be entered in favor of PCG and against Denise Simmons as to Claims 1-2, and 7-9 of the above counts;

g.    Judgment finding that Defendants willfully and maliciously misappropriated the trade secrets of PCG;

h.    Judgment finding that Defendants conspired to misappropriate the trade secrets of PCG.

i.    Judgment finding that Defendants conspired to breach a fiduciary duty owed to PCG.

j.    Judgment finding that Defendants conspired to tortuously interfere with a contract to which PCG was a party.

k.    Judgment disgorging any profit obtained through the use of the misappropriated trade secrets of PCG;

l.    Judgment awarding PCG its costs, expenses, and reasonable attorneys' fees under 18 U.S.C. § 1836;

m.    Judgment awarding PCG its costs, expenses, and reasonable attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.005.

n.    Entry of a preliminary injunction order commanding Reagan Lewis to surrender the PCG company laptop and any confidential passwords to social media or online pages related to PCG's business in his possession;

o.    Issuance of a permanent injunction pursuant to applicable federal, state, and/or common law, enjoining Defendants, their officers, agents, employees, servants,

attorneys, successors, and assigns, and all those controlled by, acting on behalf of, in privity with, or acting in concert or active participation with Defendants, from using the proprietary marketing information of PCG at any time in the future;

p.      Declaratory judgment stating that:

  i.   Defendants do not own, either in whole or in part, the PAIGE TATE & CO. mark or PAIGE TATE mark;

  ii.  Defendants do not own, either in whole or in part, the BEAUTY IN THE BIBLE mark;

  iii. PCG is the sole and exclusive owner of the PAIGE TATE & CO. mark and the PAIGE TATE mark;

  iv.  PCG is the sole and exclusive owner of the BEAUTY IN THE BIBLE mark;

  v.   PCG is the sole and exclusive owner of all PAIGE TATE & CO. marks used on or in connection with books, coloring books, craft/creative how-to workbooks, devotionals, journals, planners, stationary, and coloring cards;

  vi.  PCG is the sole and exclusive owner of the BEAUTY IN THE BIBLE mark used on or in connection with books, coloring books, craft/creative how-to workbooks, devotionals, journals, planners, stationary, and coloring cards;

  vii. PCG is the sole and exclusive owner of the marks identified in the following U.S. trademark applications: the PAIGE TATE & CO. & design mark U.S. Application Serial No. 87/295,601; the PAIGE

TATE & CO. standard character mark in U.S. Application Serial No. 87/295608; and the BEAUTY IN THE BIBLE standard character mark in U.S. Application Serial No. 87/295594; and,

viii.　Sada Lewis fraudulently filed the three trademark applications listed above in violation of 15 U.S.C. § 1051.

q.　Judgment awarding PCG pre-judgment and post-judgment interest;

r.　Judgment awarding PCG all actual and punitive damages to which it is entitled;

s.　Judgment awarding any other and further relief as the Court deems just and proper.

**B.　Jury Demand**

162.　PCG hereby demands a trial by jury on all issues so triable.

February 14, 2017　　　　　　　　　　HAYNES AND BOONE, LLP

　/s/ William B. Nash /s/
William B. Nash
Texas Bar No. 14812200
Jason W. Whitney
Texas Bar No. 24066288
Alexander B. Lutzky
Texas Bar No. 24098022
112 E. Pecan Street, Suite 1200
San Antonio, Texas 78240
210-978-7000
bill.nash@haynesboone.com
jason.whitney@haynesboone.com

*Attorneys for Plaintiff PCG Publishing Group, LLC*