UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BLUE STAR PRESS, LLC, f/n/a<br>PCG Publishing Group, LLC, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | SA-17-CA-111-OLG (HJB) |
| SEAN BLASKO, CHEVEUX ROUX, LLC,<br>CATHOLIC ART PUBLISHERS, LLC,<br>HP PUBLISHERS, LLC, and SCRSM<br>ENTERPRISES, LLC, | §<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Orlando L. Garcia, Chief United States District Judge:**

This Report and Recommendation concerns Plaintiff and Third-Party Defendants' Motion to Dismiss and/or Strike First Amended Counterclaims & Third-Party Complaint of Sean Blasko and Cheveux Roux, LLC. (Docket Entry 95.) Pretrial matters in this case have been referred to the undersigned for consideration pursuant to 28 U.S.C. § 636. (*See* Docket Entry 82.)

A hearing was held on the motion on February 1, 2018, at which time the undersigned granted the motion to strike in part and took the motion to dismiss under advisement. For the reasons set out below, I recommend that the motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

**I.    Jurisdiction.**

Plaintiff and Counter-claimants have brought claims under the Federal Defend Trade Secrets Act ("FDTSA"), 18 U.S.C. §§ 1831 *et seq.*, and the Lanham Act, 15 U.S.C. § 1125, along with a

number of state claims. This Court exercises jurisdiction over federal questions pursuant to 28 U.S.C. § 1331, and over pendent state matters pursuant to 28 U.S.C. § 1367. I have authority to issue this recommendation pursuant to 28 U.S.C. § 636(b).

## II. Background.

This case involves disputes regarding adult coloring books—coloring books aimed at adults, as opposed to children, and typically marketed as a means of relieving stress. Plaintiff Blue Star Press, LLC, formerly PCG Publishing Group, LLC ("Blue Star") began successfully publishing adult coloring books in 2015. (Docket Entry 64-2, at 4–5.)[1] Soon thereafter, Blue Star began working with Defendants Reagan and Sada Lewis to create Christian-inspired coloring books. (*Id.* at 9.) Reagan Lewis started working for Blue Star as an independent contractor in the summer of 2015, and he executed an employment agreement with Blue Star in December of that year. (*Id.*)

According to Blue Star, beginning in January 2016 Reagan Lewis secretly agreed to work on competing adult coloring book publishing with his friend, Defendant Sean Blasko, and Blasko's companies Cheveux Roux, LLC, Catholic Art Publishers, LLC, HP Publishers, LLC, and SCRSM Enterprises, LLC. (Docket Entry 64-2, at 14.) Blue Star alleges that Lewis, Blasko, and Blasko's companies agreed "to fraudulently steal coloring book opportunities and sales from Blue Star, often misappropriating Blue Star's own Trade Secrets/Confidential Information to do so." (*Id.*)

Blue Star filed suit against Reagan and Sada Lewis, Blasko, Blasko's companies and others, alleging a variety of claims including misappropriation of trade secrets in violation of the FDTSA and the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE §§ 134A.001, *et seq.*

---

[1] All the allegations in this section are taken from the parties' pleadings. For the purposes of this Report and Recommendation, the Court must assume the truth of the factual allegations in the pleadings of Counter-claimants.

2

(Docket Entry 64-2, at 29–52.) Blue Star sought declaratory relief and damages. (*Id.*)

Blasko and his company Cheveux Roux, LLC (hereinafter collectively referred to as "Blasko"), filed a Counterclaim and Third-Party Complaint. (See Docket Entry 156.)[2] Contrary to Blue Star's pleading, Blasko alleged that Reagan Lewis in fact stole trade secrets from him, including confidential methods for "determining keyword search terms and online marketing and advertising," and for "obtaining sponsored ads on Amazon for books" with less "need for 'good' keyword search terms." (*Id.* at 12–13.) According to Blasko, Reagan Lewis shared this confidential information with Blue Star employees, agents, and affiliates including Third-Party Defendants Camden Hendricks and Peter Lizcaldi (two of Blue Star's founders), and Chunky Jam LLC and its manager Thomas Barros. (*Id.* at 13.) Blasko's Counterclaim and Third-Party Complaint accordingly alleges causes of action for violation of the FDTSA, and for unfair competition in violation of the Lanham Act. (*Id.* at 41–46.) Blasko also alleges two state-law causes of action, for unfair competition and conspiracy. (*Id.* at 46–49.)

Blue Star and the Third-Party Defendants (hereinafter colectively referred to as "Blue Star") moved to dismiss Blasko's Counterclaims and Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 95.) In the motion, Blue Star argues among other things that Blasko has failed to state a claim for relief under the FDTSA, and that Blasko has failed to allege sufficient injury under the Lanham Act. (*Id.* at 5–8, 14–15.) The parties presented argument on the motion at a hearing on February 1, 2018. (*See* Docket Entry 154.)

---

[2] This Report and Recommendation refers to Blasko's Second Amended Counterclaims and Third-Party Complaint, which was filed in response to the Order of the undersigned striking portions of the previous pleading. (*See* Docket Entry 154.) But for removal of some non-material language, Blasko's current pleading is identical to the previous pleading; accordingly, this Report and Recommendation refers to the current pleading.

## III. Analysis.

Blue Star's motion seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 95, at 2.) "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court's task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). For this reason, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005) (internal quotation marks omitted)).

Blue Star seeks dismissal of all of Blasko's counterclaims. This Report and Recommendation first addresses the FDTSA claim, and then turns to the Lanham Act and pendent

state claims.

## A. *Blasko's FDTSA Claim.*

A claim for misappropriation of trade secrets under the FDTSA requires that the plaintiff plausibly allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. *North Am. Deer Registry, Inc. v. DNA Sols., Inc.*, No. 4:17-CV-00062, 2017 WL 2120015, at *6 (E.D. Tex. May 16, 2017) (citing 18 U.S.C. § 1836(b)(1)). Blue Star's motion to dismiss turns on the second element of the claim, misappropriation. (*See* Docket Entry 95, at 4–7.)

Under the FDTSA, the term "misappropriation" is defined, in pertinent part, as:

[D]isclosure or use of a trade secret of another without express or implied consent by a person who—

(I) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

   (I) derived from or through a person who had used improper means to acquire the trade secret;

   (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

   (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret . . . .

18 U.S.C. § 1839(5)(B). "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6). *See also North Am. Deer Registry, Inc.*, 2017 WL 2120015, at *6 (discussing elements).

In this case, Blasko alleges that he entered into an agreement with Reagan Lewis at the time Lewis was employed by Blue Star. (Docket Entry 156, at 13.) Under this agreement, Blasko allegedly shared with Lewis his secret method of obtaining sponsored ads for books on the Amazon website, a method that Lewis allegedly understood was a trade secret not to be shared with others. (*Id.*) Blasko alleges that Lewis nevertheless shared the method with Blue Star, which in turn incorporated the method into its own business operations. (*Id.*)

On its face, Blasko's claim appears to meet the requirements of the FDTSA. It alleges "the disclosure or use" of Blasko's trade secret without his express or implied consent, and it alleges that the disclosure was made "by a person, who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(III).

Blue Star does not argue that Blasko does not state a claim for misappropriation—instead, it argues that Blasko states a claim against Reagan Lewis, not against Blue Star. (Docket Entry 95, at 6–7.) Blue Star argues that, under the statute, any misappropriation has to be made with actual or constructive knowledge, and that, while Blasko claims Lewis knowingly stole his secret method, he fails "to allege facts plausibly showing that Blue Star had any knowledge, actual or constructive, of Blasko as the source of alleged trade secrets or of Reagan Lewis's alleged duty to maintain them secretly." (*Id.* at 6.)

The obstacle Blue Star faces in making this argument is that Reagan Lewis was Blue Star's employee at the time of the alleged misappropriation. Blasko alleges that Lewis was Blue Star's agent, that Lewis shared Blasko's secret method with other Blue Star employees, and that Blue Star

incorporated the secret method into Blue Star's business operations. (Docket Entry 156, at 13.) Taking these allegations as true, Blasko plausibly alleges that Lewis was acting within the scope of his employment at Blue Star, and thus that Blue Star is vicariously liable for Lewis's actions. (*See* Docket Entry 105, at 3–4.)

Blue Star appears to make two arguments against this allegation of vicarious liability. First, it argues that vicarious liability should not apply to FDTSA claims. (*See* Docket Entry 107, at 3.) Neither party cites any authority applying vicarious liability in the context of an FDTSA claim. This is hardly surprising, since a private civil action was not created under 18 U.S.C. § 1836 until 2016. *See* Pub. L. No. 114-153, § 2(a), (d)(1) 130 Stat. 376, 381 (2016). In the absence of FDTSA case law, however, the Court's analysis should be informed by cases interpreting the Uniform Trade Secrets Act ("UTSA"), because "the definitional sections of the [FDTSA] and ... the UTSA are very similar," and "both the House and Senate committee reports suggest that the [FDTSA] largely conforms with state trade secrets law." *Source Prod. & Equip. Co., Inc. v. Schehr*, Civil Action No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (citations omitted).[3] And "[n]early every UTSA jurisdiction" has held that vicarious liability can apply to trade secret claims. *Deluxe Fin. Servs., LLC v. Shaw*, Civil No. 16-3065 (JRT/HB), 2017 WL 3327570, at *5 (D. Minn. Aug. 3, 2017); *see also Thola v. Henschell*, 164 P.3d 524, 528–29 (Wash. Ct. App. 2007) ("[W]e agree with the majority of jurisdictions addressing the issue and conclude that one may violate the UTSA vicariously and be held responsible for such violation."). Blue Star provides no argument why the FDTSA should not be interpreted consistently with the UTSA in this regard.

---

[3] *See* H. REP. 114-529, at 14 (2016) (noting that FDTSA "is not intended to alter the balance of current trade secret law or alter specific court decisions" on misappropriation); S. REP. 114-220, at 10 (2016) (same).

Second, Blue Star argues that it cannot be held liable because Reagan Lewis's secret relationship with Blasko was in violation of his employment agreement with Blue Star, and that, had Blue Star known about it, Lewis would have immediately been fired. (Docket Entry 107, at 3.) It appears that Blue Star means to contend that vicarious liability is inapplicable because Lewis was not acting within the course and scope of his employment when he allegedly misappropriated trade secrets from Blasko. If this argument is what Blue Star intends, the argument cannot support dismissal under Rule 12(b)(6). Whether, at the time of the alleged misappropriation, Reagan was acting as Blue Star's agent, as Blasko's agent, or both, is a factual issue. Factual issues as to the scope of Lewis's employment, just like other factual disputes, "are not ripe for determination on a motion to dismiss pursuant to Rule 12(b)(6)." *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:16-cv-0033 RWS-JDL, 2016 WL 9086940, at *4 (E.D. Tex. July 20, 2016) (citing *Iqbal*, 556 U.S. at 678). "Instead, the Court must take the facts alleged as true." *Id.*

For these reasons, Blue Star's motion to dismiss should be denied as to Blasko's FDTSA claim.

### B. *Blasko's Lanham Act and State Claims.*

In his other three counterclaims, Blasko alleges that Blue Star engaged in false advertising and false association in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); committed unfair competition in violation of Texas law; and engaged in an illegal conspiracy, in violation of Texas law. (Docket Entry 156, at 43–49.) At the hearing on Blue Star's motion to dismiss, Blasko conceded Blue Star's argument that the state law unfair competition and conspiracy claims were not independent claims, but instead were derivative claims requiring an underlying violation—in this case the alleged Lanham Act violations. (*See* Docket 95, at 16, 20.) Accordingly, this Report and

Recommendation first considers whether Blasko's Lanham Act cause of action alleges plausible claims for relief.

Blue Star makes three arguments in support of dismissal of Blasko's Lanham Act cause of action: (1) that Blasko has failed to plausibly allege a claim for false advertising in violation of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act § 43(a)(1)(B)); (2) that, for similar reasons, Blasko fails to state a claim for false association in violation of 15 U.S.C. § 1125(a)(1)(A) (Lanham Act § 43(a)(1)(A)); and (3) that Blasko does not plausibly allege injuries proximately caused by either of the purported Lanham Act violations. (Docket Entry 95, at 8–15.) At the motion hearing, the parties agreed that the proximate cause argument goes to constitutional questions of Article III standing, and thus to the Court's jurisdiction over this claim. Accordingly, this Report and Recommendation first addresses the issue of proximate cause.[4]

To establish standing under 15 U.S.C. § 1125(a), "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014).[5] A plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's [conduct]; and that occurs when deception

---

[4] At the hearing, Blasko noted that, although constitutional standing is a jurisdictional issue, Blue Star failed to cite in its motion the jurisdictional-dismissal provision in Federal Rule of Civil Procedure 12(b)(1). Blasko is correct that questions of constitutional standing, as opposed to prudential standing, are properly raised under Rule 12(b)(1). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Whatever the claimed basis of Blue Star's contentions, however the Court has an "independent obligation to assure [itself] of [its] jurisdiction," which "requires [it] to examine the constitutional dimension of standing." *Id.*

[5] In addition to meeting the proximate-cause requirement, a plaintiff must be among the class whose interests "fall within the zone of interests protected by the law invoked." *Lexmark*, 134 S. Ct. at 1388. The "zone of interests" requirement does not appear to be disputed in this case.

of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391 (discussing false advertising claim).

In this case, Blasko alleges six types of conduct by Blue Star that, it contends, violate the Lanham Act:

a. Misleading consumers into believing that Blue Star has the lawful right to republish the artwork appearing on the cover of and in their books;

b. Misleading consumers by publishing knock-off books designed to pass as books published by their competitors;

c. Misrepresenting that one or more of Blue Star's books are "NEW & EXPANDED," when really the book was just a knock-off;

d. Misrepresenting that Blue Star's artwork is "all hand-drawn;"

e. Misrepresenting that Blue Star's artwork is drawn "by independent artists;" and

f. Misleading consumers into believing that the artwork in Blue Star's books is drawn by independent artists in Texas contracted by Blue Star.

(*See* Docket Entry 156, at 44–45.) With regard to the injuries allegedly caused by this conduct, Blasko claims that Blue Star's representations

> actually deceived or had the capacity to deceive a substantial segment of potential consumers because consumers would not likely have bought the books if they knew the books were knock-offs or contained pirated artwork, and a substantial segment of potential consumers would likely be influenced by buzzwords like 'hand-drawn,' "independent artists," "NEW & EXPANDED," and local Texas references. These representations therefore constitute a material deception that was likely to influence a consumer's purchasing decision.

(*Id.* at 45–46.) Blasko adds that he has "been commercially damaged and [is] likely to have been injured as a direct and proximate result of [Blue Star's] unfair competition, misrepresentation of

10

origin of goods, and false advertising." (*Id.* at 46.)

Blue Star argues that Blasko's claim of causation fails to allege any direct connection between the alleged violations and injuries to Blasko's interests. It contends that there is "no allegation that Blue Star's acts or statements actually caused customers to withhold from purchasing Blasko's products," and "there are no factual allegations remotely close to demonstrating the requisite 'causal chain' linking any Blasko's claimed injuries to Blue Star's acts or statements. (Docket Entry 95, at 15 (citing *Lexmark*, 134 S. Ct. at 1394)).

Blue Star is correct that Blasko has not alleged that he is a direct victim of Blue Star's alleged violations. For instance, Blasko might have demonstrated the needed causal connection by alleging, for example, that some of Blue Star's claimed "knock-off" publications mimicked Blasko publications or that, unlike Blue Star's publications, Blasko's publications actually were hand-drawn, created by independent artists, or created by local or Texas artists. But Blasko makes no such allegations. The most Blasko alleges is that he has "been commercially damaged and [is] likely to have been injured as a direct and proximate result of [Blue Star's] unfair competition" (*id.* at 46), but such a statement is obviously conclusory.[6]

Instead of making any of the claims of direct injury, Blasko suggests that, because Blue Star and Blasko are competitors in the adult coloring-book market, "Blue Star's misrepresentations about

---

[6] In responding to the motion to dismiss, Blasko states that "[d]iscovery may further reveal that Blue Star directly counterfeited Blasko's books," but that Blasko "has not found these counterfeit products in searches to date." (Docket Entry 105, at 14.) A claimant is not entitled to discovery to try to find facts to support conclusory statements in his pleadings. *See Iqbal*, 556 U.S. at 678–79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

its books . . . injure Cheveux's commercial interest in sales by drawing away customers who would purchase Cheveux books but for Blue Star's theft of goodwill from other competitors." (Docket Entry 14, at 20.) "In other words, [Blasko] already competes with the top-selling adult coloring books, and when Blue Star counterfeits those books, it unfairly leverages that goodwill and name recognition in competing against [Blasko] for market share." (*Id.*) The problem with this allegation is that Blasko does not allege how any of Blue Star's alleged conduct took away from Blasko's market share, as opposed to "other competitors." (*Id.*) Again, this is insufficient. Under the Lanham Act, injuries that are visited upon a competitor because of consumer deception are not within the scope of proximate cause. *Lexmark*, 134 S. Ct. at 1391. But merely alleging injuries to another competitor, or to competition in the abstract, does not show how Blasko was injured by the alleged consumer deception.

Finally, Blasko argues that he has shown proximate causation by alleging that Blue Star can sell products at lower prices for higher margins and with less cost because Blue Star does not pay for the proper licensing fees that Cheveux pays for the art in its books, "including for books containing the same themes and images such as the parties' Dia de los Muertos books." (Docket Entry 105, at 14.) This argument fails for two reasons. First, it does not appear that these allegations are relevant to Blasko's Lanham Act claim: the allegations to which Blasko refers are found in Blasko's separate, subsequent, state unfair-competition claim. (*See* Docket Entry 156, at 47.) Blasko's Lanham Act claim incorporates the allegations that precede it, but the claim does not incorporate subsequent paragraphs. (*See id.* at 43 ("Counter-Claimants fully incorporate by reference the allegations in every *preceding* paragraph of this First Amended Counterclaim and Third-Party Complaint.") (emphasis added)).

Even if these later, state-claim allegations are viewed as coming within the federal Lanham Act claim, they are not enough to state an injury to Blasko proximately caused by Blue Star. In this regard, an instructive discussion can be found in the Supreme Court's proximate cause analysis in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). In that case, a steel supply company sued a competitor under the Racketeer Influenced and Corrupt Organizations (RICO) Act, arguing that the competitor, by committing state tax fraud, was able to reduce its prices without affecting its profit margin. 547 U.S. at 454. The Court found that this sort of allegation was insufficient to meet the proximate cause requirement. In the Court's view, the cause of the asserted harm was "a set of actions (offering lower prices) entirely distinct from the alleged ... violation (defrauding the State)." *Id.* at 458. In such circumstances, the Court found the causal chain too attenuated to provide standing. *Id.* As the Court explained, the defendant company "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud." *Id.* "Likewise, the fact that a company commits tax fraud does not mean the company will lower its prices; the additional cash could go anywhere from asset acquisition to research and development to dividend payouts." *Id.* at 459.

Similarly, in this case the allegation that Blue Star allegedly failed to pay the proper licensing fees is an injury to third parties that is entirely distinct from the claimed injury to Blasko that resulted from lower prices Blue Star may allegedly have offered. Because there "is a 'discontinuity' between the injury to the direct victim and the injury to the indirect victim," the latter injury "is not surely attributable to the former (and thus also to the defendant's conduct), but might instead have resulted from 'any number of [other] reasons.'" *Lexmark*, 134 S. Ct. at 1394 (quoting *Anza*, 547 U.S. at 458–459.) In such circumstances, Blasko can allege no more than that Blue Star's alleged Lanham

Act violations may potentially have injured its commercial interests. This is not enough to show standing *Cf. United States ex rel. Univ. Loft Co. v. Avteq, Inc.*, SA-14-CA-528-OLG, Report and Recommendation, 2015 WL 13548950, at *10 (Dec. 22, 2015) (Mathy, J.) (that false certification"*might*" have led to unfair advantage insufficient connection to state Lanham Act claim) (emphasis in original), *adopted* (W.D. Tex. Jan. 8, 2016).

For all these reasons, Blasko has not sufficiently alleged an injury from the alleged Lanham Act violations. Accordingly, he lacks standing to allege a claim under the Lanham Act. Because Blasko's Lanham Act claim provides the basis for his state-law unfair competition and conspiracy claims, those claims should likewise be dismissed.

## IV. Recommendation.

For the reasons stated above, I recommend that Plaintiff and Third-Party Defendants' Motion to Dismiss and/or Strike First Amended Counterclaims & Third-Party Complaint of Sean Blasko and Cheveux Roux, LLC (Docket Entry 95) be **GRANTED IN PART** and **DENIED IN PART**. The Motion should be **DENIED** as to Blasko's FDTSA claim, and **GRANTED** as to his remaining claims.

## V. Instructions for Service and Notice for Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.

Written objections to this report and recommendation must be filed **within fourteen (14) days after being served** with a copy of same, unless this time period is modified by the district

court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    **SIGNED** on March 6, 2018.

_____
Henry J. Bemporad
United States Magistrate Judge